IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D.A. SCHOGGIN, INC, d/b/a TECHLIGHT, | § § § § § § § | |
| Plaintiff, | | |
| v. | § § § § | Civil Action No. **3:19-CV-02830-L** |
| ARROW ELECTRONICS, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Amended Motion to Transfer Case out of District/Division (Doc. 19) and Defendant's Amended Motion to Dismiss *Counts I, II, and III* (Doc. 22), filed January 20, 2020. After careful consideration of the motions, briefs of the parties, pleadings, and applicable legal authority, the court **denies** Defendant's Amended Motion to Transfer (Doc. 19) and **grants** Defendant's Amended Motion to Dismiss (Doc. 22).

**I.   Factual and Procedural Background**

On November 29, 2019, D.A. Schoggin, Inc. d/b/a Techlight ("Plaintiff" or "Techlight") filed Plaintiff's Original Complaint ("Complaint") against Arrow Electronics, Inc. ("Defendant" or "Arrow"), asserting four causes of action: Count I (Breach of Implied Warranty of Merchantability Under Tex. Bus. & Comm. Code § 2.314); Count II (Breach of Implied Warranty of Fitness Under Tex. Bus. & Comm. Code § 2.315); Count III (Violation of the Texas Deceptive Trade Practices Act); and Count IV (Breach of Contract). The Complaint alleges that:

> Techlight manufactures high-quality outdoor lighting products called luminaires. In 2016, Arrow agreed to sell Techlight 10,000 printed circuit boards ("PCBs"), each containing eight (8) mounted light-emitting diodes ("LEDs"), Techlight part

> number 101027 (the "Arrow PCBs"), at $34.90 each. Techlight incorporated the Arrow PCBs into certain of its luminaires that were sold to customers beginning in late 2016. By December 2018, Techlight was notified that a large number of its luminaires had stopped functioning. Upon inspecting a number of these failed luminaires, Techlight discovered that the LEDs on the Arrow PCBs had stopped functioning, and in many cases had released from the PCB itself. A third-party lab's 3-D x-ray inspection of over thirty (30) of the failed Arrow PCBs revealed them to contain massive solder voids behind the LED thermal pads as well as on the anode and cathode pads. These solder voids made the Arrow PCBs fatally defective and caused Techlight's luminaires to fail. To address the situation with its customers, Techlight was forced to replace the defective Arrow PCBs at significant cost. In addition, Techlight's reputation was harmed with at least one of its customers as a result of the failed Arrow PCBs, causing Techlight to lose significant additional sales. Despite being given the opportunity to correct its mistake and make the situation right with Techlight, Arrow has refused to take responsibility for its defective Arrow PCBs, forcing Techlight to bring this suit to recoup its losses.

Pl.'s Compl., Doc. 1 at 1-2, ¶ 1.

On January 7, 2020, Defendant filed a Motion to Dismiss Counts I, II, and III. Defendant also filed a Motion to Transfer Venue *as to Count IV* on the ground that, pursuant to the terms of their contract, the parties agreed to resolve any matter arising out of or related to their contract under the exclusive jurisdiction of New York courts and according to New York law. The court dismissed Defendant's motions without prejudice, ordering that Defendant seek to transfer the entire action rather than an individual claim. On January 20, 2020, Defendant proceeded with two amended motions. First, Defendant filed an Amended Motion to Transfer, seeking to transfer the entire case to the Southern District of New York. Second, Defendant filed an Amended Motion to Dismiss Counts *I, II, and III*, seeking dismissal for failure to state a claim under New York law. For the reasons set forth herein, the court determines that Defendant's Amended Motions to Transfer is **denied** and Defendant's Motion to Dismiss is **granted**.

In its **Amended Motion to Transfer**, Defendant argues that the terms of the parties' contract were formed by Arrow's Custom Product Proposal ("Arrow's Proposal" or "the Proposal"), which included an enforceable and mandatory forum selection clause. Def.'s Am.

**Memorandum Opinion and Order – Page 2**

Mot., Doc. 20 at 12. Defendant argues that, pursuant to the forum selection clause and the Supreme Court's holding in *Atlantic Marine Construction Company v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013), this case requires adjudication in a New York federal court and should be transferred under 28 U.S.C. § 1404(a). *Id*.

In response, Plaintiff argues that the contract between the parties did not incorporate the alleged forum selection clause. Plaintiff argues that the terms of the parties' contract were determined by an oral agreement that was then confirmed by a written purchase order from Plaintiff to Defendant. Pl.'s Opp'n, Doc. 27 at 2. Plaintiff argues that Defendant's Proposal contained "proposed additional terms" that Plaintiff did not accept. *Id.* at 1. The alleged forum selection clause was one of those additional terms, and, according to Plaintiff, the clause, thus, did not become part of any contract between the parties. *Id.* at 2.

## II.   Applicable Legal Standards

### A. Standard for Transfer Based on a Forum-Selection Clause

The Supreme Court held that the proper procedural mechanism for enforcing a valid forum selection clause to which the parties have agreed is through the transfer provision under 28 U.S.C. § 1404(a). *Atlantic Marine Constr. Co.*, 571 U.S. at 59. The Court expressly held that § 1404(a)'s transfer provision provides a mechanism for enforcement of forum selection clauses only when the clause points to a particular federal district court. *Id.* Further, when the parties' contract contains a valid forum selection clause pointing to a particular federal district court, the typical calculus of private and public interest factors relevant in a § 1404(a) motion changes. *Id.* at 63. In conducting its § 1404(a) analysis, the district court: (1) may not give the plaintiff's choice of forum any weight because Plaintiff, as the party contesting the forum-selection clause, bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted; (2) may

only consider arguments about the public interest factors, as the court must deem the private interest factors to weigh entirely in favor of the preselected forum; and (3) recognize that a transfer of venue will not carry with it the original venue's choice of law rules. *Id.*

A threshold determination in the enforcement of a forum selection clause is determining whether the clause has been validly incorporated into the contract. When the existence of a contractually valid forum-selection clause is in dispute, "the Court must first determine whether a contractually valid forum-selection clause exists that applies to the present case." *Brown v. Federated Capital Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014) (citing *Atlantic Marine*, 571 U.S. at 62 n.5). This determination "involves two separate inquiries: (1) whether the parties agreed to a contractually valid forum-selection clause, and (2) whether the present case falls within the scope of the forum-selection clause." *Id.* When answering these inquiries, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Stinger v. Chase Bank, USA, NA,* 265 F. App'x 224, 226-27 (5th Cir. 2008) (per curiam) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" *Atlantic Marine*, 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* A strong presumption exists in favor of the enforcement of mandatory forum-selection clauses. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962-63 (5th Cir. 1997)). "The presumption of enforceability may be overcome, however, by a clear showing that the clause is 'unreasonable' under the circumstances." *Haynsworth*, 121 F.3d at 963 (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). "Unreasonableness potentially exists when:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *The Bremen*, 407 U.S. at 12-13, 15, 18). The existence of a mandatory and valid forum selection clause, therefore, requires the court to consider arguments about public-interest factors. The public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

### B.  Standard for Rule 12(b)(6) Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**III.   Analysis**

    **a.   Whether a Valid Contract Exists Between the Parties**

The parties agree that a contract exists between them as to the PCBs. The parties disagree, however, as to whether the provision of the contract that includes the forum selection clause is valid. Defendant argues that the terms of the contract were determined by the Custom Product Proposal it delivered to Plaintiff on September 7, 2016. In the Proposal, Defendant offered to

**Memorandum Opinion and Order – Page 7**

supply Plaintiff with 10,000 PCBs at $34.90 per unit and invited submission of a purchase order. Plaintiff submitted its Purchase Order on September 13, 2016. Defendant contends that, with Plaintiff 's submission, a contract was formed. In opposition, Plaintiff argues that the terms of the parties' contract were determined by an oral agreement. Plaintiff contends that, in April 2016 at a commercial lighting industry event, the parties orally negotiated a price of $35.00 per unit for Defendant's PCBs to be used in Plaintiff's products. Plaintiff contends that, sometime thereafter, the parties orally agreed to 10,000 PCBs at $34.90 per unit. Plaintiff argues that the Purchase Order submitted to Defendant was a confirmation of this oral agreement.

Under Texas law, a party must establish contract formation by proving "an offer and acceptance and a meeting of the minds on all essential terms." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Principal Life Ins. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454-55 (Tex. App.—Dallas 2012, pet. denied)). The court determines that the Proposal is the contract that governs this case. Even if an oral contract had been formed, it would fail because of the doctrine of merger. *Hoover Panel Sys., Inc. v. HAT Contract, Inc.,* 819 F. App'x 190, 197 (5th Cir. 2020). Under the doctrine of merger, a written contract is presumed to embody the entire agreement between the parties. *Id.* Prior negotiations and oral promises will, therefore, be merged into the written contract. *Id.*

Here, the only "evidence" Plaintiff provides to support the existence of an oral agreement is an assertion that the parties had agreed to those terms found in the Proposal prior to the Proposal being sent. Pl.'s Opp'n, Doc. 27 at 6. This "evidence" is insufficient and unavailing. An unsupported statement cannot be the only evidence establishing the non-existence of a written contract. *Stinger,* 265 F. App'x at 227 ("First, Stinger argues that no valid agreement to arbitrate existed between him and Chase because he never received the CMAs [Cardmember Agreements].

Given that Stinger's only evidence was his own unsupported statement that he had not received either CMA, the district court did not commit clear error when it decided to credit Barrett's statement that Chase did send Stinger the CMA's along with his credit cards.") The existence of an oral agreement, therefore, has not been sufficiently established. Even if it had been sufficiently established, under the doctrine of merger, the written contract is presumed to embody the entire agreement. For example:

> In a contract for the sale of goods, an offer and acceptance "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Tex. Bus. & Com. Code § 2.204. An offer is "an act that leads the offeree reasonably to believe that assent (i.e., acceptance) will conclude the deal."

*Avialae S De RL De CV v. Cummins Inc.,* No. EP-19-CV-380-PRM, 2020 WL 3965014, at *4 (W.D. Tex. July 13, 2020) (quoting *Axelson, Inc. v. McEvoy-Willis, a Div. of Smith Int'l (N. Sea), Ltd.*, 7 F.3d 1230, 1232-33 (5th Cir. 1993)). A purchase order may serve as an acceptance of an offer when it responds to a sufficiently detailed price quotation or proposal. *Operating Tech. Elecs., Inc. v. Generac Power Sys., Inc.*, 2014 WL 11498165, at *4 (N.D. Tex. Mar. 11, 2014), *aff'd*, 589 F. App'x 292 (5th Cir. 2015) ("The Court concludes that OTE's January 2008 email constituted an offer to sell the 13.4V 2.5Amp battery chargers at the specific prices listed and under the same terms set out in the November 2007 quotation, which was attached and referred to in the email. All Generac had to do in response to the e-mail was to say 'I accept' and indicate how many chargers it wanted. When Generac sent its purchase orders, it did just that.").

Defendant's Proposal constituted an offer, and Plaintiff's Purchase Order constituted an acceptance. Defendant provides undisputed evidence of the parties' correspondence that clarifies the context of Defendant's offer. On September 7, 2016, in an internal e-mail exchange between Arrow employees Messrs. Alan Hoertt and Timothy Amen, Mr. Hoertt informed Mr. Amen that a

Techlight employee left him a voicemail message the previous day asking, "when he should expect a quote." Def.'s App., Doc. 30 at 4. Later the same day, Mr. Amen sent an e-mail to Techlight employees—Messrs. Doug Schoggin, David Muehlhaeusler, and Troy Walker—attaching a "revised quote," stating that "the only difference on the attached quote is pricing, coming in now at $34.90," "the board comes with a Five Year Warranty," and "the min purchase quantity is 10k boards." Def.'s App., Doc. 21 at 6. That revised quote was contained in the Proposal. On September 9, 2016, in an internal exchange among Techlight employees, Mr. Muehlhaeusler forwarded the Proposal to Mr. Walker noting that "this PO will need to be entered first of next week." Def.'s App., Doc. 21 at 20. On September 13, 2016, Defendant received Plaintiff's Purchase Order that mirrored the pricing and minimum purchase quantity quoted in the Proposal. Based upon the correspondence, Defendant reasonably believed that the Purchase Order it received from Plaintiff was an assent to conclude the deal. Defendant sent its Proposal to Plaintiff as a response to Plaintiff's request for a quote. The Proposal contained the specific prices and terms of Defendant's offer. The Purchase Order, then, mirrored those specific prices offered in the Proposal and did not modify any of its terms. Further, in Plaintiff's internal e-mail exchanges, it was specifically requested that a Purchase Order be drafted in response to the Proposal. Nevertheless, Plaintiff argues that there was, in fact, no assent. Plaintiff maintains that a signature and return were unambiguously indicated on the Proposal as the only proper method of acceptance and, since Plaintiff did not sign the Proposal, there was no acceptance. Pl.'s Opp'n, Doc. 27 at 8. Even in the absence of a signature, however, the court views the return of a purchase order as a clear response to an offer when the offer is a sufficiently detailed quotation or proposal. Defendant's Proposal was a sufficiently detailed quotation or proposal and Plaintiff's Purchase Order was a clear

response. The court, thus, recognizes the Defendant's offer and Plaintiff's acceptance as having occurred in a manner sufficient to show an agreement between the parties.

### b.  Whether the Forum Selection Cause is Contractually Valid

#### 1.  Choice of Law

The Proposal includes a provision stating, "These terms and conditions, and any matter arising out of or related thereto are governed by the laws of the State of New York." Defendant argues that New York law governs the contract dispute.  Because there is a dispute about the contract's formation, however, the court must look outside of the Proposal to choose the applicable state law to analyze this threshold issue. *Klebba v. Netgear, Inc. Co.*, No. 1:18-CV-438-RP, 2019 WL 453364, at *2 (W.D. Tex. Feb. 5, 2019). Specifically, the court must apply state-law principles of the forum state to resolve this contractual dispute, which, in this case, is Texas. *Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream, Co.*, 428 F.3d 214, 222 (5th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Under Texas's choice-of-law rules, a contract dispute is governed by the law of the state with "the most significant relationship to the transactions and the parties." *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W. 2d 50, 53 (Tex. 1991).  In determining the state with "the most significant relationship," the court must consider: "(1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation[,] and place of business of the parties." Restatement (Second) of Conflict of Laws § 188; *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 771-72 (5th Cir. 2016). Based on the record, the court determines that Texas law, not New York law, governs the contract-formation dispute, as it has the most significant relationship to the transactions and the parties.

First, the contract was entered into by the parties electronically. Second, the evidence shows that negotiations took place in two physical locations, one of which was Texas. In early 2016, two of Arrow's employees met with Techlight's founder at Techlight's facility in Dallas, Texas, to show a model of Arrow's product and present its purchase price. Pl.'s Compl., Doc. 1 at 4, ¶ 9. The price was not feasible for Techlight, and it did not make a purchase. *Id.* In April 2016, the parties met at LightFair International in San Diego, California, where they negotiated an agreed-upon purchase price. Pl.'s Compl., Doc. 1 at 4, ¶ 10. Plaintiff argues that the parties later agreed to reduce the agreed-upon purchase price, but it does not state where those negotiations took place. *Id.* Third, Techlight received Arrow's products in eight different shipments at its facility in Dallas, Texas, from December 5, 2016, to June 26, 2017. Pl.'s Compl., Doc. 1 at 5, ¶ 14. Fourth, the subject matter of the Proposal is broad enough to include many states. The PCBs supplied by Arrow to Techlight were used to install luminaires at approximately 460 locations of a national retail chain. Pl.'s Compl., Doc. 1 at 5, ¶ 15. Fifth, Techlight is a Texas corporation, and Arrow is a New York corporation.

The court concludes that negotiations initiating the contract and the majority of Defendant's performance under the contract took place in Texas. The court also determines that more weight should be given to Plaintiff's place of incorporation and principal place of business (Texas) than Defendant's place of incorporation and principal place of business (New York), as no other factors favor New York. *See Klebba*, No. 1:18-CV-438-RP, 2019 WL 453364, at *3 ("Although Netgear headquartered in California, there is no evidence that the other factors favor California."). Since the contract was entered into electronically and the subject matter of the Proposal is broad enough to include any state, the court concludes that these factors do not favor Texas or New York and have no bearing on the court's determination of the applicable state law.

For the reasons discussed, the court determines that Texas is the state with the most significant relationship to the contract-formation dispute, and, accordingly, Texas law governs whether a contract existed between the parties. The court must now decide whether a valid forum selection clause exists.

### 2. Incorporation by Reference

Turning to the threshold determination of whether a contractually valid forum selection clause exists, the first inquiry is whether the parties agreed to a contractually valid forum selection clause. The dispositive issue is whether the forum selection clause was validly incorporated into the contract. The court determines that it was not.

Under the general principles of Texas contract law, separate terms may be incorporated by reference into a contract. *Polyflow, LLC v. Specialty RTP, LLC,* No. 4:15-CV-02817, 2016 WL 6909383, at *6 (S.D. Tex. May 17, 2016) (quoting *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 663 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 693 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). A contract may incorporate an unsigned document by reference provided the document signed "plainly refers" to another writing and the incorporated terms. *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). The referring language "requires more than merely mentioning" those terms, it must make clear that the parties intended for the outside material to become part of the contract. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 190 (Tex. App.—Dallas 2013, no pet.). For example, in *Bob Montgomery Chevrolet, Inc.*, the court stated:

> The language, "Additional benefits, qualifications and details of the PDR Linx Service program are available for your review at our website: http://www.linx

> manager.com/pdf/CRCTermsConditions.pdf" does not state the internet document is incorporated by reference into the parties' agreement, does not plainly refer to additional terms and conditions in the internet document as becoming part of the parties' agreement, and does not otherwise suggest that the parties intended for the internet document to become part of their agreement. Instead, this language indicates that the internet document contained informative material only, not binding terms and conditions intended to be part of the parties' contract.

*Id.*; *see also Tribble*, 154 S.W.3d at 663 (stating that the doctrine of incorporation by reference "does not extend to documents that simply appear to relate to the same transaction.").

Here, Defendant's Proposal included a "Warranty Terms and Conditions" section on its fourth and final page that stated:

> Seller warrants those products assembled or customized by it against defects caused solely by faulty assembly or customization for five (5) years after delivery. Any products subjected to operating conditions outside of the recommended operating range (as determined by the status of the temperature recording label and/or engineering failure analysis) are not covered by the terms of this warranty. Notwithstanding the foregoing, all other products, and the components and materials utilized in any assembled or customized products, are covered by, and subject to, the terms, conditions, and limitations of the manufacturer's standard warranty, which warranty is expressly in lieu of any other warranty, express or implied, of or by Seller or the manufacturer.
>
> Customer's exclusive remedy, if any, under these warranties is limited, at Seller's election, to any one of (a) refund of customer's purchase price, (b) repair by Seller or the manufacturer of any products found to be defective, or (c) replacement of any such product. Customer acknowledges that except as specifically set forth or referenced in this paragraph, THERE ARE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, IN ADVERTISING MATERIALS, BROCHURES, OR OTHER DESCRIPTIVE LITERATURE) BY SELLER OR ANY OTHER PERSON, EXPRESS OR IMPLIED, AS TO THE CONDITION OR PERFORMANCE OF ANY PRODUCTS, THEIR MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE. SELLER ASSUMES NO RESPONSIBILITY OR LIABILITY WHATSOEVER FOR MANUFACTURER'S PRODUCT SPECIFICATIONS OR THE PERFORMANCE OR ADEQUACY OF ANY DESIGN OR SPECIFICATION PROVIDED TO SELLER BY OR ON BEHALF OF CUSTOMER. Use of the customer's part number on any document or on any products is for convenience and convenience only and does not constitute any representation by Seller with respect to the performance, specifications, or fitness of any part for any purpose.
>
> **If not already provided, a complete list of the Terms and Conditions are available upon request.**

Pl.'s App., Doc. 17 at 4 (capitalization in the original, bold added for emphasis). The complete Terms and Conditions of Sale were made available to Defendant's customers on its website pursuant to Defendant's general business practice. Def.'s App. Doc. 21 at 3. The Terms and Conditions of Sale were detailed in paragraph 4 as follows:

> Seller's rights and remedies will be cumulative and not exclusive. You are responsible for all losses, costs, and expenses incurred by Seller in collecting any sums You owe. Seller shall have the right to offset against any amounts owed by Seller to You. These terms and conditions, and any matter arising out of or related thereto are governed by the laws of the State of New York. Any proceeding arising out of or related to this Agreement must be commenced in any court of competent jurisdiction located in the County and State of New York. The parties hereby submit to the exclusive jurisdiction of such court and waive (a) any right to a jury trial or (b) defense of lack of personal jurisdiction in such court. EACH OF THE PARTIES IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDING IN SUCH COURTS AND ANY CLAIM THAT SUCH PROCEEDING BROUGHT IN ANY SUCH COURTS HAS BEEN BROUGHT IN ANY INCONVENIENT FORUM. Each party agrees that a final judgment in any such proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

Pl.'s App., Doc. 17 at 5 (capitalization in the original). Defendant was not specific enough in its incorporation of the forum selection clause. The statement, "If not already provided, a complete list of the Terms and Conditions [is] available upon request," did not indicate or state the website at which those Terms and Conditions were available or that the internet document contained binding terms and conditions intended to be part of the parties' contract. Plaintiff argues that these were additional terms and conditions not included at the time of the Proposal. Pl.'s Opp'n, Doc. 27 at 10-11. In light of the relevant case law, this argument controls whether the forum selection clause is part of the parties' agreement. Merely mentioning the existence of additional documents that appear to relate to the same transaction does not meet the "plain reference" standard required to create a contractually valid forum selection clause. *See Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 190; *Tribble*, 154 S.W.3d at 663. As no contractually valid forum selection clause exists,

there is no need for the court to address whether the present case falls within the scope of that clause.

### c. Whether Plaintiff Has Failed to State Claims upon which Relief Can Be Granted

Defendant asserts that Plaintiff has failed to state a claim based on two grounds: (1) the terms of the forum selection clause that included a New York Choice-of-Law provision and (2) the parties' exclusion and disclaimer of any implied warranties. Plaintiff's claims are not barred by the forum selection clause. The court has ruled that the forum selection clause is not a valid part of the parties' contract. Since it is not binding, Texas law applies and the choice-of-law provision has no effect. Plaintiff's claims are, however, barred by the parties' exclusion and disclaimer of implied warranties. The warranty terms and conditions of the parties' valid contract explicitly state that "THERE ARE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND […] BY SELLER OR ANY OTHER PERSON, EXPRESS OR IMPLIED, AS TO THE CONDITION OR PERFORMANCE OR ANY PRODUCTS, THEIR MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE." Def.'s Am. Mot., Doc. 23 at 12 (citing Def.'s App., Doc. 17 at 4). These agreed-upon terms and conditions warrant the dismissal of Count I (Breach of Implied Warranty of Merchantability Under Tex. Bus. & Comm. Code § 2.314), Count II (Breach of Implied Warranty of Fitness Under Tex. Bus. & Comm. Code § 2.315), and Count III (Violation of the Texas Deceptive Trade Practices Act).

Count IV (Breach of Contract) is the remaining claim. It survives because the warranty terms and conditions in the parties' contract states "Customer's exclusive remedy, if any, under these warranties is limited, at Seller's election, to any one of (a) refund of customer's purchase price, (b) repair by Seller or the manufacturer of any products found to be defective, or (c) replacement of any such product." Def.'s App., Doc. 17 at 4. Plaintiff contends that, in violation

**Memorandum Opinion and Order – Page 16**

of this warranty, Defendant refused to take responsibility for its defective products after being notified of their defects. Pl.'s Compl., Doc. 1 at 7, ¶ 23. Defendant may argue that "if any" means Plaintiff was not guaranteed any remedy at all. This possibility, however, does not negate that Plaintiff has pleaded a legally cognizable claim. *St. Luke's Episcopal Hosp.*, 355 F.3d at 376. Upon review of the allegations, the court determines that Plaintiff has sufficiently pleaded facts to state a plausible claim above a speculative level, such that the court may reasonably infer, assuming the factual allegations are true, that Defendant is liable to Plaintiff for the claim asserted. Viewing these well-pleaded facts in the light most favorable to the Plaintiff, Count IV remains viable. *See Great Plains Trust Co.,* 313 F.3d at 312.

### IV.     Amendment of Pleadings

In response to Defendant's motion to dismiss, Plaintiff did not request to amend its pleadings in the event the court determined that it failed to state a claim. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

In this case, as the court previously noted, recovery is precluded as to Counts I, II, and III as a matter of law under the terms of the contract between the parties. Any attempt at amending

the Complaint with respect to these three claims will be futile. This is so because there is no way that Plaintiff can successfully amend in light of the limiting language in the parties' contract with respect to available remedies. Accordingly, the court **declines** to allow Plaintiff to amend its pleadings as to these three claims, and they are **dismissed with prejudice.**

## V.     Conclusion

For the reasons herein stated, the court **denies** Defendant's Amended Motion to Transfer Venue (Doc. 19). The court **grants** Defendant's Amended Motion to Dismiss Counts I, II, and III (Doc. 22), and these counts are **dismissed with prejudice**. The only remaining claim is Count IV.

**It is so ordered** this 30th day of November, 2020.

Sam A. Lindsay
United States District Judge